UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VERA JEAN ROBINSON, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0913 |
| | § | |
| TIMOTHY F. GEITHNER, | § | |
| SECRETARY, UNITED STATES | § | |
| DEPARTMENT OF THE TREASURY, | § | |
| INTERNAL REVENUE SERVICE, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment ("Motion") (Doc. No. 14). After considering the Motion, all responses thereto, and the applicable law, the Court finds that the Motion must be granted.

## I.  BACKGROUND[1]

Plaintiff Vera Robinson brings claims against Defendant Timothy Geithner, Secretary of the U.S. Department of the Treasury Internal Revenue Service ("Agency"), to enforce an EEOC order issued against the agency. Plaintiff, an African American woman, began working at the Agency in 1986, and she is currently employed by the Agency.

At the time of the incidents in question, Plaintiff was a Bankruptcy Specialist and compensated at the GS-11 level, step 10. (Administrative Judge's Bench Decision ("AJ Decision"), Doc. No. 1-1, at 3.) In May 2004, Plaintiff negotiated a settlement agreement, for an unrelated incident, that allowed Plaintiff a two week temporary promotion to Supervisory Revenue Officer, GS-13. (*Id.* at 4.) She was temporarily promoted on July 25, 2004, and her

---

[1] Unless otherwise noted, the background facts of this case are not in dispute.

promotions were extended several times by the Territory Manager.  (*Id.* at 4–5.)  As a result, instead of being paid at the GS-13 level for one pay period (two weeks) as the agreement contemplated, she served as Supervisory Revenue Officer and was paid at the GS-13 level for five pay periods, pay periods 14 through 19.  (*Id.* at 5.)  She was overpaid in the amount of $1,657.85.  (*Id.*)

On October 1, 2004, Plaintiff was denied a promotion to the GS-12 level, and the Agency instead selected Rita Galvan, a Hispanic woman, to fill the position.  (*Id.* at 4.)  The next day, the Agency retroactively returned Plaintiff to the position of Bankruptcy Specialist effective July 25, 2004, and informed her that she would be required to pay back the overpayment she received during temporary promotion, in the amount of $1657.85. (*Id.* at 5.)

For pay period 20, Plaintiff was returned to GS-11, step 4, when she should have been returned to her former pay level of GS-11, step 10.  (Mot. ¶ 6; Resp., Doc. No. 15, at 2 (citing Notification of Personnel Action, Attachment O, Doc. No. 14-4, at 21).)  Plaintiff asserted that her paycheck for pay period 20 was $600.00 short.  (AJ Decision at 5.)  The Agency approved the waiver of the $1657.85 overpayment, but did not reimburse her for the money that was taken from her check.  (*Id.* at 14.)

On December 2, 2004, Plaintiff filed a formal charge of discrimination with the EEOC against the Agency regarding the denial of a promotion and the problems related to her temporary promotion.  The Administrative Judge ("AJ") conducted a hearing on April 18 and 19, and issued an opinion on October 31, 2006.  The AJ found that: (1) the Agency discriminated against Plaintiff on grounds of race when it denied Plaintiff a promotion; (2) the Agency retaliated against Plaintiff for prior EEO activity through the termination of Plaintiff's temporary detail and the payment discrepancies described above; and (3) Plaintiff was subjected to a hostile

2

work environment with retaliatory motive based on the poor performance reviews and other letters she received.  (*Id.* at 7–15.)  With respect to damages, the AJ Decision contains separate sections entitled "Back Pay," "Compensatory Damages," "Pecuniary Losses," and "Non-Pecuniary Losses."  (*Id.* at 16–20.)  The "Pecuniary Loss" section states, in its entirety:

> In her damages package, Ms. Robinson submitted a statement requesting $600 for monies taken out of her check due to the retroactive termination of her temporary position.
>
> On May 25, 2004, via mediation with TM Davaz, Ms. Robinson received a settlement agreement which stated that Ms. Robinson was to receive a two week temporary promotion to the Supervisory Revenue Officer, GS-1101-13 position which expired on July 30, 2004. On July 25, 2004, Ms. Robinson was temporarily promoted.  TM Davaz who was named in all three of Ms. Robinson's prior EEO's extended her temporary detail as GS-1169-13 Supervisory Revenue Officer to October 2, 2004 one day after he selected Ms. Galvan to the position of Bankruptcy Specialist, GS-1101-12.  On October 2, 2004, TM Davaz requested that Ms. Robinson's temporary detail as GS-1169-13 Supervisory Revenue Officer be retroactive to July 25, 2004, which resulted in an overpayment part of which was waived. Thus, I found that processing Ms. Galvan's temporary detail retroactive to July 25, 2004 and requiring her to repay the overage was based on a retaliatory motive. Therefore, I find Plaintiff is entitled to reimbursement for the overpayment amount in which was taken out of her paycheck, with interest at the maximum legal amount from October 2, 2004 to August 21, 2006, plus any and all other fees assessed to her bank account as a result of the overpayment deduction from her paycheck.

(AJ Decision at 17–18.)

The Agency ordered various remedial measures, including:

> 3. The Agency shall determine the compensation due Ms. Robinson for working in the Supervisory Revenue Officer, GS-1101-13 position, the period beginning October 2, 2004 to August 21, 2006, with interest at the maximum legal limit, no later than sixty (60) calendar days after the date this decision becomes final.  Any monies the Agency collected due to the alleged overpayment shall be returned to Ms. Robinson.  If Ms. Robinson has already paid income tax on this money, the Agency must determine the legal ramifications of this payment and insure Ms. Robinson is not doubled [sic] taxed.  Ms. Robinson shall cooperate in the Agency's efforts to compute the compensation amount and any and all fees assessed to her bank account and shall provide all relevant information requested by the Agency.  If there is a dispute regarding the exact amount of overpayment and/or fees, the Agency shall issue a check to Ms. Robinson for the undisputed amount within sixty (60) calendar days of the date the Agency determines the

3

amount it believes to be due.  Ms. Robinson may petition for enforcement or clarification of the amount in dispute.

4. The Agency shall remove the February 10, 2006 write-up regarding work assignments that had been reassigned to the Philadelphia, PA Service Center and any and all discipline issued as a result of the write-up from Ms. Robinson's official personnel folder should be removed and never cited again.

(AJ opinion at 21–22.)

The AJ opinion was "reversed in part and affirmed in part" on appeal to the EEOC, Office of Federal Operations ("OFO").  (Appeal No. 0720070015, Decision ("OFO Decision"), Doc. No. 1-2, at 7.)  Notably, the remedies section of the OFO Decision does not discuss the $600 that Plaintiff believes was taken out of her paycheck, but states only that "the AJ found that complainant was entitled to reimbursement for the amount of the overpayment she received and which was taken out of her paycheck, with interest."  (*Id.* at 3–4.)

The Agency was directed to comply with the Order contained in the OFO Decision, to the extent it had not already done so.  (*Id.*)  In relevant part, the order provided:

C. Within sixty (60) calendar days of the date this decision becomes final, the Agency is directed to determine any compensation due complainant for working in the Supervisory Revenue Officer position during the period between October 1, 2004 to August 21, 2006, with interest.  Any money the Agency collected due to the overpayment of salary to complainant for work performed during this period will be returned to complainant.  Further, if complainant has already paid income tax on the overpayment, the agency shall determine the tax ramifications and assure that complainant is not required to pay income tax twice on the overpayment.

D. The agency shall remove the counseling letter issued April 12, 2005 from complainant's official personnel folder.  The agency is also ordered to revise complainant's mid-year performance appraisal, received on July 29, 2005, raising the three disputed critical elements to reflect a rating of 4.8.  All appraisals issued which utilized the mid-year appraisal shall be removed from complainant's official personnel folder.  Complainant shall also award complainant any and all awards she would have received with the higher performance appraisal.

(*Id.* at 7–8.)

The Agency moved for reconsideration, which was denied.  (Denial of Request for Reconsideration, Doc. No. 1-3, at 2.)  The reconsideration order stated that "[t]he decision in EEOC Appeal No. 0720070015 remains the Commission's final decision," and ordered the Agency to take the remedial action stated therein to the extent it had not already done so.  (*Id.*)

The Agency contends that, pursuant to paragraph "C" of the OFO Decision, it owed Plaintiff the gross amount of $416 for pay period 20.  (Declaration of Lynda C. Haynes, Doc. No. 14-1, ¶ 9(e), (f).)  On May 14, 2009, Plaintiff received a payment of $268.04, representing the net pay, after taxes and insurance, for the $416 owed.  (*Id.* ¶ 9(g).)  She subsequently received an additional $144.42, representing interest due on the $416.  (*Id.*)  Plaintiff does not dispute that this payment was made, but states only that it "was in no way related to the shortage from plaintiff's paycheck for pay period 20 for which she was granted relief."  (Resp. at 2.)

Plaintiff subsequently petitioned the EEOC for enforcement of the OFO Decision. (Decision on a Petition for Enforcement ("Enforcement Decision"), Doc. No. 1-4.)  The EEOC Enforcement Order found that the Agency had complied with two of the items that Plaintiff brought to their attention—(1) compensation for the GS-13 position from October 2, 2004 to August 21, 2006; and (2) raising Plaintiff's performance rating to a 4.8.  (*Id.* at 2–3.)  On the third issue, the EEOC found that the Agency had not repaid Plaintiff the $600 that it deducted from her pay.  (*Id.* at 3.)

Plaintiff filed suit in this Court on March 11, 2011, seeking to enforce the EEOC order[2] against the Agency.  (Compl., Doc. No. 1, ¶¶ 2, 14.)  She states that the Agency (1) failed to change Plaintiff's 2008 evaluation to reflect a 4.8 rating (*id.* ¶ 15); (2) failed to calculate the amount of back pay owed and compensate Plaintiff at the GS-13 level from October 2, 2004

---

[2] Although Plaintiff says that she seeks to enforce the AJ Decision (Compl. ¶ 14), the Enforcement Decision and the applicable regulations provide that a complainant may enforce the final decision of the commission issued under its appellate jurisdiction.  (Enforcement Decision at 1, 2; 29 C.F.R. § 1614.503(a).)

through August 21, 2006 (*id.* ¶¶ 16–17); (3) the Agency failed to restore Plaintiff's experience rating to GS-12 from October 1, 2004 to August 21, 2006 (*id.* ¶¶ 18–19)[3]; and (4) the Agency failed to repay the $600.00 that it took from her account during pay period 20 in 2004 (*id.* ¶¶ 20–21).

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court may not make credibility determinations or weigh the evidence. *Harvill v. Westward Communications*, L.L.C., 433 F.3d 428, 436 (5th Cir. 2005). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment

---

[3] Plaintiff does not address this issue in her Response, but the Agency provides evidence that the Agency has restored her experience and GS-12 rating. (Haynes Decl. ¶ 7.) Accordingly, the Court must grant summary judgment on this portion of Plaintiff's claim.

evidence.  Fed. R. Civ. P. 56(e)(1); *see, e.g.*, *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Additionally, any "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

### III. ANALYSIS

#### A.  The Court's Ability to Grant Plaintiff Relief

By regulation, the EEOC has provided that federal employees may seek enforcement of EEOC orders.  One section of the regulation discusses judicial review:

> (g) Notification to complainant of completion of administrative efforts. Where the Commission has determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the right to file a civil action for enforcement of the decision pursuant to Title VII, the ADEA, the Equal Pay Act or the Rehabilitation Act and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act, 5 U.S.C. 701 et seq., and the mandamus statute, 28 U.S.C. 1361, or to commence de novo proceedings pursuant to the appropriate statutes.

29 C.F.R. § 1614.503(g).  The regulations also provide that "[i]f the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance."  29 C.F.R. § 1614.504(a); *see also Puente v. Ridge*, 324 Fed. Appx. 423, 426 (5th Cir. 2009) ("[E]nforcement of the EEOC order was not an avenue available to [Plaintiff] in the district court

because she did not notify the EEOC of her employer's non-compliance."); *Sanders v. Reno,* 186 F.3d 684, 685 (5th Cir. 1999).

Courts have determined that a plaintiff has two options to seek judicial review following an EEOC determination: (1) a suit to enforce the EEOC order, or (2) a *de novo* suit under the relevant antidiscrimination statute.  *See, e.g.*, *Puente v. Ridge*, 324 Fed. Appx. 423, 426 (5th Cir. 2009); *Carver v. Holder*, 606 F.3d 690, 693–98 (9th Cir. 2010); *Scott v. Johanns*, 409 F.3d 466, 469 (D.C. Cir. 2005); *Clemente v. Holder*, 1:11CV897 JCC/TRJ, 2011 WL 5548959, at *5 (E.D. Va. Nov. 15, 2011); *Perez v. Potter*, CIV. A. L-05-131, 2008 WL 2313090, at *1 (S.D. Tex. May 30, 2008); *Adcock v. Roche*, 5:04-CV-208(DF), 2006 WL 1285045, at *4 (M.D. Ga. May 5, 2006).  Plaintiff's Complaint makes clear that this is not a *de novo* action, but one to enforce the EEOC's final order.  (Compl. ¶¶ 2, 14.)

The Agency states that "[a]s the plaintiff does not have an EEOC order finding that defendant is in non-compliance, . . . there is no underlying basis to support any current allegation or claim that the defendant has failed to comply with an EEOC order on this alleged issue." (Reply, Doc. No. 16, at 2.)  Courts have found that, under  29 C.F.R. § 1614.503(g), the prerequisites to filing a suit for enforcement are that (1) the Commission has determined that an agency is not complying with a prior decision, or (2) the agency has failed or refused to submit any required report of compliance.  29 C.F.R. § 1614.503(g)[4]; *see also Carver v. Holder*, 606 F.3d 690, 697 (9th Cir. 2010)[5]; *Timmons v. White,* 314 F.3d 1229, 1232 (10th Cir. 2003);

---

[4] The Enforcement Decision also informs the petitioner that she "has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement," and cites 29 C.F.R. §§ 1614.407 (relating to Title VII and ADEA), 1614.408 (relating to the Equal Pay Act), and 1614.503(g). The first two are *de novo* actions, as explained in the above paragraph.
[5] The Ninth Circuit did not explicitly find that 29 C.F.R. § 1614.503(g) imposed these prerequisites, but that the EEOC's order finding the agency in compliance was a clarifying order and thus part of the administrative disposition of plaintiff's claim.  This precluded the court from finding the agency in noncompliance.  Once the agency submitted its final compliance report, "there remained no portion of the OFO's order left to enforce." *Carver*, 606 F.3d at 698.

*Clemente*, 2011 WL 5548959, at *5; *Murchison v. Astrue*, 689 F. Supp. 2d 781, 790–94 (D. Md. 2010), *aff'd in part, vacated in part, remanded*, 10-1200, 2012 WL 475581 (4th Cir. Feb. 15, 2012)[6]; *Fitzgerald v. Napolitano*, CV209-153, 2010 WL 3731177, at *4 (S.D. Ga. Sept. 7, 2010). The Court agrees.

With respect to the job performance rating issue, Plaintiff alleges that the Agency failed to change her 2008 job performance rating to 4.8.  However, in the Enforcement Decision, the EEOC found that the Agency "has substantially complied with our order and provided an appropriate remedy" on the issue of job performance  (Enforcement Decision at 3.)

With respect to the compensation at the GS-13 level that Plaintiff contends is owed to her for the period of October 2, 2004 through August 21, 2006, the EEOC stated:

> Petitioner maintains that the Agency still owes her compensation for when she served as Supervisory Revenue Officer, GS1101-13, beginning October 2, 2004 to August 21, 2006, with interest.  The Agency, however, responded that it does not owe any additional compensation for this period and that it had waived the requirement that Petitioner repay any overpayment of salary. . . . We note that Petitioner has not demonstrated that the Agency actually deducted any funds from her pay.  Accordingly, we find that the Agency complied with our order.

(*Id.*)

Accordingly, the Court cannot consider either of these claims, and must grant summary judgment for the Agency.

### B. $600 Payment

Plaintiff also contends that the Agency must pay her $600 that was deducted from her paycheck for pay period 20 in 2004.  However, Plaintiff points to no portion of the final EEOC order that requires the Agency to pay $600.  *See* 29 C.F.R. § 1614.503(a) (regulation is entitled

---

[6] The Fourth Circuit's order assumed, without deciding, that the regulation imposes these prerequisites.  However, it found that the first prerequisite, a finding of non-compliance, was met because "had the SSA's misrepresentations not been erroneously accepted by the EEOC," and "[h]ad the EEOC properly construed the SSA's report of compliance during its initial review, the EEOC would have determined that the SSA was not complying with the OFO's order."  *Murchison v. Astrue*, 10-1200, 2012 WL 475581, at *3 (4th Cir. Feb. 15, 2012).

9

"Enforcement of final Commission decisions," and states, "A complainant may petition the Commission for enforcement of a decision *issued under the Commission's appellate jurisdiction*.").  Plaintiff cites only to the AJ Decision as containing this requirement.  However, the Denial of Request for Reconsideration states that "[t]he decision in EEOC Appeal No. 0720070015 remains the Commission's final decision."  (Denial of Request for Reconsideration at 2.)  That appeal "reversed in part and affirmed in part" the AJ decision.  (OFO Decision at 7.)  Thus, the Court will not consider any portion of the AJ Decision not incorporated into the OFO Decision.

The Enforcement Decision found that "the Agency failed to establish that it has complied with the Commission's order in the underlying decision" because "[t]he record is devoid of any evidence from the Agency that Petitioner was repaid the $600."  (Enforcement Decision at 3.)  However, the EEOC did not indicate anything in the OFO Order that specified that the Agency owed Plaintiff $600.  The EEOC must have derived this remedy from paragraph "C" in the OFO Decision, since the only two paragraphs cited from that order were paragraphs "C" and "D" (regarding Plaintiff's performance rating).  Paragraph "C" explicitly instructs the Agency to "determine any compensation due complainant for working in the Supervisory Revenue Officer position during the period between October 1, 2004 to August 21, 2006, with interest," and return to Plaintiff any money collected due to the overpayment of salary.  (OFO Decision at 7.)  The Enforcement Decision also may not "change the result of a prior decision or enlarge or diminish the relief ordered but may further explain the meaning or intent of the prior decision."  29 C.F.R. § 1614.503(c).  The Court finds that the Enforcement Decision does not explain the meaning or intent of the prior decision, as it does not make any findings with respect to the $600

deduction.  It notes only that "Petitioner *contends* that the Agency owes her $600 that was deduced [sic] from her pay during pay period 20." (Enforcement Decision at 3.)[7]

The Agency has submitted evidence that it actually deducted a gross amount of $416 for pay period 20.  (Haynes Decl. ¶ 9(e), (f).)  Plaintiff received payment for net pay and interest. (*Id.* ¶ 9(g).)  Plaintiff does not dispute that this payment was made or find fault with the Agency's calculation.  Rather, she states that the $416 was a "reduction in pay," whereas the $600 represented a "retaliatory shortage to her paycheck." (Resp. at 7–8.)  Plaintiff does not point to the relevant payment evidence to support this distinction.  The Court finds it unavailing. The Agency calculated the $416 shortage by comparing the amount Plaintiff should have received at GS-11, step 10, in comparison to what she actually received that pay period, where she was labeled at a GS-11, step 4.  (*See* Haynes Decl. ¶ 9(c).)  Plaintiff's Statement of Earnings and Leave (Attachment U, Doc. No. 14-5, at 5) shows that she earned a gross amount of $2,292.00 during pay period 20.  She should have received $2,708.00 at the GS-11, step 4 level, as evidenced by her Statement of Earnings and Leave (Attachment V, Doc. No. 14-5, at 6) for pay period 21.  There is no evidence of a $600 shortage.

Accordingly, the Court finds that the final EEOC opinion does not require the Agency to pay $600.  Plaintiff also has not shown an issue of material fact with respect to whether the Agency still owes her for compensation deducted from pay period 20.  Summary judgment must be granted for Defendant.

---

[7] At the Court's hearing on this Motion, the Agency represented that it did not have the opportunity to respond to this argument at the EEOC enforcement level due to various procedural and notice problems.

**IV. CONCLUSION**

For the reasons stated in this order, Defendant's Motion for Summary Judgment is

**GRANTED**.

   **IT IS SO ORDERED**.

   **SIGNED** at Houston, Texas, on this the 7th day of May, 2012.

   _____

   KEITH P. ELLISON
   UNITED STATES DISTRICT JUDGE